# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL IMMIGRANT JUSTICE CENTER, | ) ) ) | |
| Plaintiff, | ) ) | No. 12-cv-04691 |
| v. | ) ) | Judge Andrea R. Wood |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter concerns a Freedom of Information Act ("FOIA") request related to eleven immigration matters decided by the United States Attorney General. Plaintiff National Immigrant Justice Center ("NIJC"), a non-profit organization that provides immigration assistance, deportation defense, and asylum representation to low-income immigrants, submitted the FOIA request to Defendant Department of Justice ("DOJ") and received a number of documents in response. But many more documents were withheld as privileged. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, DOJ's motion for summary judgment (Dkt. No. 61) and NIJC's motion for summary judgment (Dkt. No. 69) are both granted in part and denied in part.

## BACKGROUND

Immigrants subject to removal generally go through the following process. First, the immigrant's case is heard by an immigration judge. *See* 8 C.F.R. § 1003.14. Immigration judges exercise the powers and duties delegated to them by the Attorney General. *Id.* § 1003.10(b). Decisions by immigration judges are subject to review by the Board of Immigration Appeals

("BIA"). *Id.* § 1003.10(c).The BIA consists of attorneys appointed by the Attorney General to act as her delegates. *Id.* § 1003.1(a)(1). Both immigration judges and the BIA are employed by the Executive Office of Immigration Review, which is within DOJ. (Def.'s Resp. to Pl.'s 56.1 Stmt. of Facts ("DRPSF") ¶ 6, Dkt. No. 81.) The Department of Homeland Security ("DHS") represents the government's interests in removal proceedings before immigration judges and the BIA.[1] *See* 6 U.S.C. § 251.

The Attorney General has the power to review any BIA case she chooses as well as those the BIA refers to her for decision. *See* 8 C.F.R. § 1003.1(h)(1). Besides a mandate that the Attorney General's decision be in writing, there are no procedural requirements for the Attorney General's decision-making process. *Id.*; *see also Nani v. Brownell*, 153 F. Supp. 679, 680 (D.D.C 1957) (holding that, pursuant to 8 C.F.R. § 1003.1, Attorney General is not required to give notice to the immigrant when a case is referred to her for review). The Attorney General's decisions in removal matters are binding and precedential. 8 C.F.R. § 1003.1(g). Immigrants may seek review of final BIA or Attorney General decisions in the appropriate federal court of appeals, 8 U.S.C. § 1252(a)(1) & (5), where the Office of Immigration Litigation ("OIL") defends the BIA's or the Attorney General's decision. *See* 28 C.F.R. §§ 0.45(k), 0.20(a). If the decision gets appealed to the U.S. Supreme Court, the Office of the Solicitor General represents the government. *See* 28 U.S.C. § 1254.

To gain insight into the policies and procedures used by the Attorney General when reviewing removal cases, NIJC filed a FOIA request on December 3, 2010 seeking production of all of the Attorney General's communications related to eleven contested immigration decisions issued by the Attorney General. (Pl.'s Resp. to Def.'s 56.1 Stmt. of Facts ("PRDSF") ¶ 1, Dkt.

---

[1] Until March 1, 2003, lawyers from DOJ prosecuted removal and deportation actions before immigration judges and the BIA. (DRPSF ¶ 5.)

No. 71.) DOJ's Office of Information Policy ("OIP") received NIJC's request on December 22, 2010, and acknowledged receipt of the request by letter dated January 21, 2011. (*Id.* ¶¶ 2, 3.) Over the course of the following year, OIP identified 5,269 records responsive to NIJC's request, of which 989 were released to NIJC. (*Id.* ¶¶ 17, 18.) The documents that were not released were withheld pursuant to Exemptions 5 and 6 of FOIA. (*Id.* ¶¶ 6–17.)

On February 21, 2013, NIJC sent a second FOIA request seeking Office of Legal Counsel ("OLC") communications related to the same eleven immigrations decisions issued by the Attorney General. (*Id.* ¶ 19.) By January 30, 2015, OIP released several hundred pages of communications, with excisions made and documents withheld pursuant to Exemptions 5 and 6 of FOIA. (*Id.* ¶¶ 25, 26.)

NIJC then filed this lawsuit on June 15, 2012, alleging that DOJ violated FOIA by unlawfully withholding, in whole or in part, non-exempt documents responsive to their requests. After the complaint was filed, the parties attempted to work out their dispute, and DOJ produced a number of documents. But the parties were not able to resolve their differences completely, and thus on June 12, 2014, NIJC filed an amended complaint, again seeking an order requiring DOJ's production of responsive records. Eventually, DOJ filed its motion for summary judgment (Dkt. No. 62), in which it argues that it fully complied with FOIA and has released all non-exempt records responsive to NIJC's two requests. To support its motion, DOJ has submitted two *Vaughn* indices, which are "comprehensive listing[s] of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 n.3 (7th Cir. 1998). One index relates to the first FOIA request regarding the Attorney General's communications (Def.'s Mot. for Summ. J. Ex. P, Dkt. No. 62-1), and the other relates to the second FOIA request regarding OLC

3

communications (*Id.*, Dkt. No. 62-2.) With respect to the first FOIA request, DOJ also has submitted a declaration from Laurie A. Day, Chief of Initial Request Staff at DOJ OIP. (*Id.*, Dkt. No. 62-1.) With respect to the second, the OLC request, DOJ has submitted a declaration from Paul P. Colborn, Special Counsel in OLC. (*Id.*, Dkt. No. 62-2.)

In response to DOJ's motion, NIJC has filed a cross-motion for summary judgment, arguing that DOJ has improperly applied Exemption 5 to documents that should be released. (Dkt. No. 70.) NIJC makes two arguments: (1) DOJ improperly withheld documents as privileged that are actually *ex parte* communications in connection with contested proceedings, and therefore not protected; and (2) DOJ's *Vaughn* index does not provide sufficient detail regarding the contents of documents withheld pursuant to the deliberative process privilege.

**DISCUSSION**

Congress enacted FOIA "to open up the workings of government to public scrutiny through the disclosure of government records." *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (internal quotation marks omitted). When a request under FOIA is made, the government may withhold a document only if it falls within one of nine statutory exemptions. 5 U.S.C. § 552(a)(4)(B). "Congress created these exemptions because it realized that legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Because disclosure is "the dominant objective of the FOIA," the Court construes "FOIA exemptions narrowly in favor of disclosure." *Patterson v. I.R.S.*, 56 F.3d 832, 835 (7th Cir. 1995) (internal quotation marks omitted). Consequently, the government has the burden of justifying its decision to withhold requested documents. *Id.*; *see also* 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"). The Court may grant summary judgment in favor of the government in a FOIA case only if the government

4

provides "affidavits [that] describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson,* 56 F.3d at 836 (quoting *PHE, Inc. v. U.S. Dep't of Justice,* 983 F.2d 248, 250 (D.C. Cir. 1993)).

Here, DOJ relies on Exemption 5 of FOIA to support withholding the requested documents.[2] That Exemption allows the government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522(b)(5). "Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). One such privilege that Exemption 5 incorporates is the deliberative process privilege, which protects government documents reflecting the deliberative or policy-making processes. *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). Exemption 5 also incorporates the attorney-client privilege and the attorney work-product protection. *Rockwell Intern. Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).

I. **Communications with OSG and OIL**

DOJ contends that all of the withheld documents are protected by the deliberative process privilege, and therefore were properly withheld under Exemption 5. NIJC counters that the records DOJ withheld pursuant to Exemption 5 constitute *ex parte* communications and are therefore not privileged. Specifically, NIJC contends that the Attorney General's communications with OIL and OSG were *ex parte* communications.

An *ex parte* communication is a communication between an adversary and an adjudicator about the case that is done without giving an affected party notice or the opportunity to respond.

---

[2] DOJ also relies on Exemption 6, but NIJC does not challenge that Exemption.

*See D'Acquisto v. Washington*, 640 F. Supp. 594, 621 (N.D. Ill. 1986). It is an adjudicator's responsibility to "accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." *C & F Packing Co. v. Doskocil Companies, Inc.*, 126 F.R.D. 662, 688 (N.D. Ill. 1989) (quoting A.B.A. Code of Judicial Conduct, Canon III(A)(4)); *see also* EX PARTE, Black's Law Dictionary (10th ed. 2014) (defining *ex parte* as "[o]n or from one party only, usu. without notice to or argument from the adverse party").

To support its argument that the Attorney General's communications with OIL and OSG were *ex parte*, NIJC points to the Ninth Circuit's decision in *Klamath Water Users Protective Association v. U.S. Department of Interior*, 189 F.3d 1034 (9th Cir. 1999). *Klamath* involved the control and administration of a water source by the Bureau of Reclamation, an agency within the Department of Interior ("Department"). *Id.* at 1035. Many Indian Tribes received their water from this source and disputed the management of the water. *Id.* Among those involved in the dispute were the Klamath Basin Tribes. *Id.* The Department decided to create a long-term solution to the water-source problem and, in the process of developing this solution, entered into an agreement with the Klamath Basin Tribes to provide consultation and other services. *Id.* at 1035–36. The other water users eventually filed a FOIA request for documents provided to or received from the Klamath Basin Tribes pertaining to the water-source issue. *Id.* at 1036. The Department withheld communications between itself and the Klamath Basin Tribes, arguing that the documents were the functional equivalent of inter-agency/intra-agency communications protected under Exemption 5. *Id.* at 1037. The Ninth Circuit disagreed, however, holding that the documents submitted to the Department by the Klamath Basin Tribes were *ex parte*

6

communications in contested proceedings. Crucial to that determination was the fact that the Klamath Basin Tribes had an interest in the contested matter that the Department was deciding—the agency's adjudication would affect water allocations to the Klamath Basin Tribes and to others. *Id.* at 1038.

NIJC argues here that, similar to the Klamath Basin Tribes, OIL and OSG had an interest in the issue being adjudicated because on appeal they would be litigating against one of the parties to the administrative adjudication—the immigrant. However, at the time OIL and OSG were communicating with the Attorney General, they were not adversaries to the immigrant or interested parties in the proceedings. The eleven contested immigration decisions had, in fact, been prosecuted by DHS at the administrative level. Thus, at the time the Attorney General reviewed the cases, the only interested parties were the immigrant and DHS. It does not appear from DOJ's *Vaughn* index that it withheld any communications between DHS and the Attorney General. If it had, the *ex parte* status of those communications would present a separate issue.

But in contrast to DHS, OIL and OSG were simply groups within the same agency as the Attorney General, giving advice. OIL and OSG only become substantively involved in a case after the Attorney General has made its decision, and the case is appealed out of DOJ administrative proceedings and into federal court. At that point, the Attorney General is no longer an adjudicator, and OIL and OSG are charged with representing the Attorney General. But at no point during the administrative process are OIL and OSG involved or interested parties in the litigation.

While OIL and OSG do not represent the immigrant or the government at the administrative stage, they do represent the future interests of the Attorney General. In this capacity, communications by OIL and OSG with the Attorney General during her review of a

BIA decision may constitute communications between attorneys and a client in anticipation of litigation. Indeed, it is possible that the Attorney General, in anticipation of its decision being appealed to federal courts, wanted to consult with her appellate attorneys to ensure her decisions were legally sound and would be upheld.

The inter-agency communications here are strikingly different from the communications at issue in *Klamath*. Here, the contested communications were all among DOJ employees. There, the contested communications were between an agency and a non-government, private party. Further, the application of the *ex parte* rule in *Klamath* resulted in a relatively simple and narrow precedent—outside groups with an interest in agency administrative proceedings cannot privately consult with the adjudicator of those proceedings. Extending this rule to communications made between various groups *within* an agency would not only be logistically difficult but also would stymie the very purpose of the Exemption 5—to allow for the free flow of information and ideas within an agency. Notably, NIJC has failed to cite any other case that has applied *Klamath's* ruling regarding *ex parte* communications to inter-agency communications.

In sum, the Court finds that NIJC's argument that communications between the Attorney General and either OIL or OSG constitute *ex parte* communications lacks merit and cannot justify withholding the documents.

## II.     Adequacy of *Vaughn* Index

NIJC also argues that DOJ's motion for summary judgment should be denied because its *Vaughn* index does not contain sufficient information to show that the communications were properly withheld pursuant to Exemption 5. Specifically, NIJC contends that many of the

documents within the *Vaughn* index appear to be discussions of existing agency policy, which are not protected by the deliberative process privilege.

FOIA requires agencies to produce "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," as well as "instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(B) & (C). To prevail in a FOIA case, the government "must supply the courts with sufficient information to allow [the courts] to make a reasonable determination that they were correct" in withholding documents. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). One way the government may do this is through a *Vaughn* index.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). The purpose of the privilege is to "enhance the quality of agency decisions by protecting open and frank discussion" within the government. *Id.* (internal quotation marks and citation omitted). "Consistent with its purpose, the deliberative process privilege typically does not justify the withholding of purely factual material, nor of documents reflecting an agency's final policy decisions, but it does apply to predecisional policy discussions, and to factual matters inextricably intertwined with such discussions." *Enviro Tech*, 371 F.3d at 374–75. Thus, to fall within the deliberative process privilege, the withheld material must be: (1) predecisional, meaning it is "antecedent to the adoption of an agency policy," and (2) deliberative, that is "actually . . . related to the process by which policies are formulated." *Id.* (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc) (internal alterations omitted)). A document is predicisional if it helped agency officers make a specific policy decision, and a

document is deliberative if it "contains considerations of a policy's merits, rather than mere facts or articulations of existing policy." *Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 292 (S.D.N.Y. 2012). Meanwhile, "opinion[s] about the applicability of existing policy to a certain state of facts" and "explanations of agency regulations in specific factual situations" are not "predecisional" because they "discuss established policies and decisions" rather than providing suggestions or recommendations about what a policy should be. *See Coastal States Gas. Corp.*, 617 F.2d at 868.

DOJ invokes the deliberative process privilege, the attorney-client privilege, and the attorney work-product protection to justify its withholdings. And it provides two *Vaughn* indices—one for the first FOIA request to the Attorney General and one for the second FOIA request to OLC. Each index includes the date, number of pages, sender, recipient, a brief description, and the applicable FOIA exemption for each withheld document. Broadly, however, DOJ argues that all communications that underlie, or are related to, the Attorney General's adjudication of individual alien immigration appeals are properly withheld as preliminary decision making. DOJ points to the fact that the agency published a final decision on each immigration appeal as evidence that prior communications were pre-decisional and deliberative.

Notwithstanding DOJ's arguments, the public is "vitally concerned with the reasons which . . . supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the 'working law' of the agency and have been held by the lower courts to be outside the protection of Exemption 5." *N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 152–153 (1975). Thus, Exemption 5 does not cover "papers which reflect an agency's group thinking in the process of working out its policy and determining what the law should be."

*Id.* at 153. Consequently, simply providing NIJC with the final immigration decisions is inadequate.

The Court is unable to discern from the brief descriptions provided in the *Vaughn* indices whether all documents were properly excluded as part of the deliberative process. Indeed, the Court agrees with NIJC that some of the documents withheld by the government appear to fall outside of Exemption 5, since they appear to articulate internal agency policy. Notably, the *Vaughn* indices describe a July 24, 2008 email between Kevin Jones, an attorney from the Office of Legal Policy, to Office Attorney General and Office of Legal Counsel attorneys as "reflecting internal deliberations and legal advice regarding the Attorney General's review of *Silva-Trevino*." (PRDSF Ex. P at 6, Dkt. No. 62-1.) This document was withheld solely pursuant to the deliberative process privilege. But the subject line of the email states, "Re providing for briefing in an AG certified case," which suggests that the content of the email discusses the applicable policy when briefing a case certified for the Attorney General to review. If existing policy was discussed in this email and other emails in the *Vaughn* indices, then those communications were not properly withheld. Consequently, the Court orders the government to re-review all documents that were withheld solely on the basis of the deliberative process privilege and to determine whether there are portions, or full documents, that ought to be disclosed. The Court will review any remaining documents *in camera*.

The *Vaughn* indices also describe certain documents that were withheld pursuant to the attorney-client privilege and attorney work-product protection. As mentioned previously, Exemption 5 prevents the disclosure of documents containing attorney-client privileged material or attorney work product. A document is covered by the attorney-client privilege if it includes confidential communications between an attorney and the agency regarding the legal

11

ramifications of the agency's actions. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252–53 (D.C. Cir. 1977). Meanwhile, attorney work product consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(A)(ii). NIJC does not appear to dispute the sufficiency of the descriptions of document that were withheld due, in whole or in part, to the attorney-client privilege or attorney work-product protection. Thus, the Court finds that the documents labeled as covered by the attorney client privilege or attorney work-product protection are subject to FOIA Exemption 5.

## CONCLUSION

For the foregoing reasons, DOJ's motion for summary judgment (Dkt. No. 61) and NIJC's motion for summary judgment (Dkt. No. 69) are both granted in part and denied in part. By April 24, 2018, DOJ shall provide to the Court for *in camera* review copies of any documents identified in DOJ's *Vaughn* indices as exempt from FOIA solely due to the deliberative process privilege. In reviewing its documents, DOJ should also confirm that none of the withheld documents are communications between DHS and the Attorney General. To the extent there are any withheld DHS documents, DOJ should also produce those documents to the Court for *in camera* review. DOJ should also file a notice on the docket confirming delivery. The Court will review the documents and issue a ruling as to specific documents.

ENTERED:

Dated: March 27, 2018

_____
Andrea R. Wood
United States District Judge